**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose S., File No. 26-CV-3605 (JMB/EMB)

Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; David J. Venturella, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and Sheriff Joel Brott, *in his official capacity as Sheriff of Sherburne County*,

Respondents.

**ORDER**

---

Delaney Nelson, Carlton Fields, P.A., Minneapolis, MN, for Petitioner Jose S.

David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Jose S.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241, which names Todd Blanche, Markwayne

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Mullin, David J. Venturella, David Easterwood and Joel Brott as Respondents. (Doc. No. 1 [hereinafter, "Pet."].) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Jose S. is a 27-year old native and citizen of Mexico. (Pet ¶ 3; Doc. No. 9-1 at 1.)

2. In 2003, when Jose S. was approximately five years old, he entered the United States without inspection. (Pet. ¶¶ 3, 14, 58, 59.) While living in the United States, Jose S. grew up, attended school, and began a career as a carpenter. (*Id.* ¶¶ 60–61.)

3. In approximately 2015, Jose S. applied for and was granted Deferred Action for Childhood Arrivals (DACA) status. (*Id.* ¶ 65.)

4. In or around 2018, Jose S.'s DACA status was revoked following a conviction in California state court for driving under the influence. (*Id.* ¶¶ 65, 66.)

5. In 2019, Jose S. moved to Minnesota with his wife to work under a master carpenter. (*Id.* ¶ 61.)

6. Since arriving in Minnesota and until July 3, 2026, Jose S. has committed four petty misdemeanor driving offenses, but has no history of any criminal convictions. (*Id.* ¶ 64.)

7. Jose S. has two young children; both are United States citizens. (*Id.* ¶ 62.)

8. On July 3, 2026, Jose S. was arrested in Dakota County, Minnesota on suspicion of driving under the influence. (*Id.* ¶ 70.) Immigration officials learned of Jose S.'s non-citizen status after conducting a biometric check of his identity while in custody at the Dakota County Jail. (Doc. No. 9-1 at 2.)

9. In the early morning hours of July 6, 2026, while he was detained by Dakota County at the Dakota County Jail, Immigration and Customs Enforcement (ICE) officials took Jose S. into federal custody. (Pet. ¶¶ 4, 70.)

10. ICE officers did not show Jose S. a warrant when they first took him into federal custody at the Dakota County Jail; rather, after taking him into custody and then transporting him to the Sherburne County Jail, immigration officials served Jose S. with a Form I-200 Warrant of Arrest under 8 U.S.C. § 1226. (*Id.* ¶¶ 4, 72; Doc. No. 9-3 (containing certification that the Form I-200 was served "at Sherburne County Jail, MN").) Respondents, therefore, detained Jose S. prior to serving the Form I-200.

11. In addition, the Form I-200 itself contains conflicting information as to the date of issuance, as the date in the upper right-hand corner (July 4, 2026) does not match the digital signature time stamp (July 6, 2026).[2] (Doc. No. 9-3.) The Court concludes that the Form I-200 was issued when it was signed, on July 6, 2026, not July 4, 2026.

---

[2] Respondents submitted a declaration made by an ICE deportation officer, Benjamin Northwood, to verify certain facts around Jose S.'s detention. (Doc. No. 9.) The Court doubts the truth of certain statements in Northwood's declaration because Northwood does not attest to having personal knowledge of the facts and circumstances discussed in the declaration; instead, the declaration includes a boilerplate paragraph explaining that Northwood relies on his "personal and professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers." (Doc. No. 9 ¶ 3.) In addition, the declaration omits an important discrepancy, attesting that the Form I-200 was issued on July 4, 2026, but making no mention that it was signed two days later. Finally, and most troubling here, Northwood recounts the sequence in a different order than what the documentation shows, stating that officials served the Form I-200, then placed Jose S. under arrest, and then transported him to Sherburne County Jail. (*Id.* ¶ 9.) The documents themselves, however, show that officials took Jose S. into custody first, then transported him to Sherburne County Jail, and thereafter served the Form I-200. (*See* Doc. Nos. 9-1–9-3.)

12. The Form I-200 was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (*Id.*) Thus, Respondents detained Jose S. pursuant to their discretionary authority under 8 U.S.C. § 1226.

13. On July 8, 2026, ICE officers issued a Notice to Appear (NTA), which charged Jose S. as being removable under Immigration and Nationality Act (INA) § 212(a)(6) and (a)(7) for being in the United States without possession of a valid immigrant visa, reentry permit, border crossing card, or other valid entry document. (Doc. No. 9-4 at 1, 3 (bearing a certificate of service attesting to service in person on July 8, 2026).)[3]

14. Jose S. remains detained at the Sherburne County Jail. (Pet. ¶ 14.)

15. On August 13, 2026, Jose S. filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.)

16. On August 13, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on August 17, 2026. (Doc. No. 4.)

17. On August 18, 2026, Respondents filed a timely response to the Petition. (Doc. No. 8.)

[3] It is not clear where the NTA was issued or served, but given the statement that "[o]n July 8, 2026, [Jose S.] was transported to the St. Paul Field Office in Fort Snelling, Minnesota, for booking and processing" (Doc. No. 9-1 at 2), the Court acknowledges the likelihood that the NTA was served during this "booking and processing" time.

## DISCUSSION

In his Petition, Jose S. seeks immediate release, arguing that his detention violates the Fourth and Fifth Amendments as well as applicable federal regulations. For their part, Respondents argue that Jose S. has been an "applicant for admission" continuously for the last twenty-two years and, therefore, subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Respondents also argue that Jose S. was detained pursuant to a valid warrant. For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### B. Actual Basis for Detention

It is an undisputed matter of fact Respondents took Jose S. into custody pursuant to their authority under 8 U.S.C. § 1226 because the Form I-200 was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 9-3.) In response to the Petition, however, Respondents advance a different basis for the detention of Jose S.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention of non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry).

This Court concludes that Respondents cannot now change the basis for the arrest of Jose S. He was arrested under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through the filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which the arrest and detention is based, the Court concludes that Respondents have detained Jose S. under the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242

(JRT/DLM), 2026 WL 1243500, *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C. Invalidity of Warrant

Because Respondents detained Jose S. pursuant to section 1226, and do not assert that they conducted a warrantless arrest under 8 U.S.C. § 1357(a), the Court next considers whether Jose S. was brought into custody pursuant to a valid warrant. For the reasons discussed below, the Court concludes he was not. (Doc. No. 8 at 7.)

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (quotation omitted)). A Form I-200 is an administrative arrest warrant which authorizes a non-citizen's arrest if it is issued "*[a]t the time of issuance* of the [NTA], *or at any time thereafter* and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b) (emphasis added). Putting both rules together, DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). Respondents' argument that Form I-200 documents are valid if they are issued after, or irrespective of, the time of issuance of the NTA contradicts the plain language of section 236.1(b) and lacks any legal support.

In this case, Respondents did not follow the sequence set forth in section 236.1(b). The undisputed facts show that the Form I-200 issued either two or four days before the

time of issuance of the NTA. Respondents generated the NTA on July 8, 2026 (Doc. No. 9-4 at 2, 3; *see also* Doc. No. 9 ¶ 11), and the Form I-200 was issued either on July 4, or July 6, 2026 (Doc. No. 9-3 (showing both dates); *see also* Doc. No. 9 ¶ 7 (stating the I-200 was issued on July 4, 2026). Thus, the Form I-200 was plainly invalid under 8 C.F.R. § 236.1(b), and Respondents detained Jose S. without a required warrant.

Because Respondents took Jose S. into custody pursuant to an invalid warrant, immediate release is the appropriate remedy. *See Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28, (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking following arrest in the field); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to a Form I-200 that was invalid by virtue of being issued prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't

good enough to trigger § 1226(a).").[4]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Jose S. immediately in Minnesota, without conditions, and in any event no later than 4:00 p.m. CT on August 25, 2026.

2. On or before 11:00 a.m. CT on August 26, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Jose S.

3. On or before 11:00 a.m. CT on August 26, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents

[4] Although the Court need not address the question of whether Jose S.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Jose S.'s favor. Jose S. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, and his separation from his wife and children); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Jose S.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Jose S. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Jose S. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 24, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court